**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JUDGE BUCHWALD

IRVING S. BRAUN, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

FACEBOOK, INC, MARK ZUCKERBERG, DAVID A. EBERSMAN, DAVID M. SPILLANE, MARC L. ANDREESEN, ERSKINE B. BOWLES, JAMES W. BREYER, DONALD E. GRAHAM, REED HASTINGS, PETER A. THIEL, MORGAN STANLEY & CO. LLC, J.P. MORGAN SECURITIES LLC, GOLDMAN, SACHS & CO. MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, BARCLAYS CAPITAL INC., ALLEN & COMPANY LLC, CITIGROUP GLOBAL MARKETS INC., CREDIT SUISSE SECURITIES (USA) LLC, DEUTSCHE BANK SECURITIES INC., RBC CAPITAL MARKETS LLC, and WELLS FARGO SECURITIES LLC,

Defendants.

Civil Action No.

12 CV 4150

CLASS ACTION

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

JURY TRIAL DEMANDED



Plaintiff Irving S. Braun ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, the investigation of Plaintiff's counsel, including the review and analysis of U.S. Securities and Exchange Commission ("SEC") filings by Facebook, Inc. ("Facebook" or the "Company"), news articles and other publicly available information concerning the defendants named herein.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all purchasers of the common stock of Facebook pursuant and/or traceable to the Company's May 18, 2012 initial public offering (the

"IPO" or the "Offering") seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§11, 12(a)(2) and 15 of the Securities Act [15 U.S.C. §§77k, 77l(a)(2) and 77o].

3.      This Court has jurisdiction of this action pursuant to §22 of the Securities Act [15 U.S.C. §77v] and 28 U.S.C. §1331.

4.      Venue is proper in this District pursuant to §22 of the Securities Act and 28 U.S.C. §1391(b) and (c).  The acts and conduct complained of herein occurred in substantial part in this District and many of the Underwriter Defendants, as defined below, maintain their principal places of business in this District.

5.      In connection with the acts and conduct alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails and telephonic communications and the facilities of the NASDAQ National Securities Market ("NASDAQ"), a national securities market.

## PARTIES

6.      Plaintiff Irving S. Braun purchased Facebook common stock directly in or traceable to the IPO, and was damaged thereby.  Plaintiff's purchases of Facebook common stock are set forth in the certification attached hereto.

7.      Defendant Facebook maintains its principal executive offices at 1601 Willow Road, Menlo Park, California 94025.  Facebook operates as a social networking company worldwide.

8.    Defendant Mark Zuckerberg ("Zuckerberg") is the founder of the Company and was, at all relevant times, Chairman of the Board of Directors (the "Board") and Chief Executive Officer of Facebook.  Zuckerberg signed the IPO Registration Statement (defined below).

9.    Defendant David A. Ebersman ("Ebersman") is, and was at all relevant times, Chief Financial Officer ("CFO") of Facebook.   Defendant Ebersman signed the IPO Registration Statement.

10.    Defendant David M. Spillane ("Spillane") is, and was at all relevant times, Chief Accounting Officer of Facebook.  Defendant Spillane signed the IPO Registration Statement.

11.    Defendant Marc L. Andreessen ("Andreessen") is, and was at all relevant times, a member of the Board of Facebook.   Defendant Andreessen signed the IPO Registration Statement.

12.    Defendant Erskine B. Bowles ("Bowles") is, and was at all relevant times, a member of the Board of Facebook.  Defendant Bowles signed the IPO Registration Statement.

13.    Defendant James W. Breyer ("Breyer") is, and was at all relevant times, a member of the Board of Facebook.  Defendant Breyer signed the IPO Registration Statement.

14.    Defendant Donald E. Graham ("Graham") is, and was at all relevant times, a member of the Board of Facebook.  Defendant Graham signed the IPO Registration Statement.

15.    Defendant Reed Hastings ("Hastings") is, and was at all relevant times, a member of the Board of Facebook.  Defendant Hastings signed the IPO Registration Statement.

16.    Defendant Peter A. Thiel ("Thiel") is, and was at all relevant times, a member of the Board of Facebook.  Defendant Thiel signed the IPO Registration Statement.

17.    The Defendants listed above at ¶¶ 8-16 are collectively referred to herein as the "Individual Defendants."

18.     By reason of their management positions and their ability to make public statements in the name of Facebook, the Individual Defendants were and are controlling persons, and had the power and influence to cause, and did cause, Facebook to engage in the conduct complained of herein.

19.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") served as an underwriter to Facebook in connection with its IPO.

20.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter to Facebook in connection with its IPO.

21.     Defendant Goldman, Sachs & Co. ("Goldman Sachs") served as an underwriter to Facebook in connection with its IPO.

22.     Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") served as an underwriter to Facebook in connection with its IPO.

23.     Defendant Barclays Capital Inc. ("Barclays") served as an underwriter to Facebook in connection with its IPO.

24.     Defendant Allen & Company LLC ("Allen") served as an underwriter to Facebook in connection with its IPO.

25.     Defendant Citigroup Global Markets Inc. ("Citigroup") served as an underwriter to Facebook in connection with its IPO.

26.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") served as an underwriter to Facebook in connection with its IPO.

27.     Defendant Deutsche Bank Securities Inc. ("Deutsche Bank") served as an underwriter to Facebook in connection with its IPO.

28.     Defendant RBC Capital Markets LLC ("RBC") served as an underwriter to Facebook in connection with its IPO.

29.     Defendant Wells Fargo Securities LLC ("Wells Fargo") served as an underwriter to Facebook in connection with its IPO.

30.     Defendants Morgan Stanley, J.P. Morgan, Goldman Sachs, Merrill Lynch, Barclays, Allen, Citigroup, Credit Suisse, Deutsche Bank, RBC and Wells Fargo are collectively referred to herein as the "Underwriter Defendants."

## SUBSTANTIVE ALLEGATIONS

31.     Facebook operates as a social networking company worldwide.  The Company builds tools that enable users to connect, share, discover, and communicate with each other; enables developers to build social applications on Facebook or to integrate their websites with Facebook; and offers products that enable advertisers and marketers to engage with its users.  Facebook had 901 million monthly users ("MAUs") as of March 31, 2012 and averaged 526 million daily users ("DAUs") in March 2012.

32.     On or about May 16, 2012, Facebook filed with the SEC a Form S-1/A Registration Statement (the "Registration Statement"), for the IPO.

33.     On or about May 18, 2012, the Prospectus (the "Prospectus") with respect to the IPO, which forms part of the Registration Statement, became effective and 421 million shares of Facebook common stock were sold to the public at $38 per share, thereby valuing the total size of the IPO at more than $16 billion.

34.     The Registration Statement and Prospectus (collectively the "Offering Materials") contained untrue statements of material facts, omitted to state other facts necessary to make the

statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.

35.     With regard to the Company's expectations for the second quarter of 2012, the Offering Materials stated, in pertinent part, as follows:

> Based upon our experience in the second quarter of 2012 to date, the trend we saw in the first quarter of DAUs increasing more rapidly than the increase in number of ads delivered has continued.  We believe this trend is driven in part by increased usage of Facebook on mobile devices where we have only recently begun showing an immaterial number of sponsored stories in News Feed, and in part due to certain pages having fewer ads per page as a result of product decisions.

36.     In describing the risks related to Facebook's business and industry, the Offering Materials stated, in pertinent part:

> We had 488 million MAUs who used Facebook mobile products in March 2012.  While most of our mobile users also access Facebook through personal computers, we anticipate that the rate of growth in mobile usage will exceed the growth in usage through personal computers for the foreseeable future, in part due to our focus on developing mobile products to encourage mobile usage of Facebook.  We have historically not shown ads to users accessing Facebook through mobile apps or our mobile website.  In March 2012, we began to include sponsored stories in users' mobile News Feeds.  However, we do not currently directly generate any meaningful revenue from the use of Facebook mobile products, and our ability to do so successfully is unproven.  We believe this increased usage of Facebook on mobile devices has contributed to the recent trend of our daily active users (DAUs) increasing more rapidly than the increase in the number of ads delivered.  If users increasingly access Facebook mobile products as a substitute for access through personal computers, and if we are unable to successfully implement monetization strategies for our mobile users, or if we incur excessive expenses in this effort, our financial performance and ability to grow revenue would be negatively affected.

37.     The Offering Materials also stated:

> We generate a substantial majority of our revenue from advertising. The loss of advertisers, or reduction in spending by advertisers with Facebook, could seriously harm our business.

38.     The statements referenced above were untrue statements of material fact.  The true facts at the time of the IPO were that Facebook was then experiencing a severe and pronounced reduction in revenue growth due to an increase in users of its Facebook mobile applications ("apps") or website through mobile devices rather than through personal computers.  Additionally, defendants failed to disclose during the roadshow conducted in connection with the IPO, certain Underwriter Defendants reduced their second quarter and full year 2012 performance estimates for Facebook, which revisions were material information which was not shared with all Facebook investors, but rather, was selectively disclosed by defendants to certain preferred investors and omitted from the Offering Materials.

39.     Information about certain Underwriter Defendants' concerns about Facebook's profitability began to surface on May 19, 2012, when *Reuters* reported in an article entitled "Morgan Stanley Was A Control-Freak On Facebook IPO – And It May Have Royally Screwed Itself," that **"Facebook . . . altered its guidance for research earnings last week, during the road show, a rare and disruptive move**." (emphasis added).

40.     Additional information surfaced on May 22, 2012, in an article entitled "Insight: Morgan Stanley cut Facebook estimates just before IPO," when *Reuters* reported that that Facebook's lead underwriters, Morgan Stanley, JP Morgan and Goldman Sachs, all reduced their earnings forecasts for Facebook in the middle of the IPO roadshow and only a handful of preferred investor clients were informed of the reduction.  In that regard, the article stated in pertinent part:

> In the run-up to Facebook's $16 billion IPO, Morgan Stanley, the lead underwriter on the deal, unexpectedly delivered some negative news to major clients: The bank's consumer Internet analyst, Scott Devitt, was reducing his revenue forecasts for the company.
>
> The sudden caution very close to Facebook's initial public offering - while an investor road show was underway - was a big shock to some, said two investors who were advised of the revised forecast.

They say it may have contributed to the weak performance of Facebook shares, which sank on Monday and Tuesday - their second and third days of trading - to end more than 18 percent below the IPO price.  The $38 per share IPO price valued Facebook at $104 billion.

*       *       *

The change in Morgan Stanley's estimates came on the heels of a May 9 Facebook filing of an amended prospectus with the U.S. Securities and Exchange Commission, in which the company expressed caution about revenue growth due to a rapid shift by users to mobile devices.  Mobile advertising to date is less lucrative than advertising on desktops.

"This was done during the roadshow - I've never seen that before in 10 years," said a source at a mutual fund firm who was among those called by Morgan Stanley.

JPMorgan Chase and Goldman Sachs, which were also major underwriters on the IPO but had lesser roles than Morgan Stanley, also revised their estimates in response to Facebook's SEC filing, according to sources familiar with the situation.

*       *       *

The people familiar with the revised Morgan Stanley projections said Devitt lowered his revenue estimate for the second quarter and also cut his full-year 2012 revenue forecast.

*       *       *

"That deceleration freaked a lot of people out," [one] investor added.

Scott Sweet, senior managing partner at the research firm IPO Boutique, said he was also aware of the reduced estimates.

"They definitely lowered their numbers and there was some concern about that," he said.  "My biggest hedge fund client told me they lowered their numbers right around mid-road show."

That client, he said, still bought the issue but "flipped his IPO allocation and went short on the first day."

"VERY UNUSUAL"

Sweet said analysts at firms that are not underwriting IPOs often change forecasts at such times.  However, he said it is unusual for analysts at lead underwriters to make such changes so close to an IPO.

"That would be very, very unusual for a book runner to do that," he said.

The lower revenue estimate came shortly before the IPO was priced at $38 a share, the high end of an already upwardly revised projected range of $34 to $38, and before Facebook increased the number of shares being sold by 25 percent.

"It's very rare to cut forecasts in the middle of the IPO process," said an official with a hedge fund firm who received a call from Morgan Stanley about the revision.

41.     Similarly, on May 22, 2012, in an article entitled "Facebook Slides Amid Roadshow Questions," *The Wall Street Journal* also reported that that Facebook underwriters, Morgan Stanley and Goldman Sachs, updated their financial projections for Facebook after the Company added warnings to its IPO prospectus about how its user base is increasing more rapidly than the number of ads it delivers.  In that regard, the article stated in pertinent part:

Although the exact date of the analyst revisions wasn't clear, the people close to the deal said they were changed soon after Facebook updated its prospectus May 9, about a week before the offering priced.

*            *            *

Large institutions, whose interest in a stock offering is key to setting its price, would have known about Facebook's filing and the analyst revisions at least seven business days before they placed final orders for the IPO, according to people familiar with the situation.

In Goldman Sachs's case, the research revision was verbally communicated to prospective buyers by the Goldman sales team, according to someone familiar with the situation.

42.     Then, on May 23, 2012, in an article entitled "Regulators, investors turn up heat over Facebook IPO," *Reuters* reported that regulators from the Financial Industry Regulatory Authority,

the SEC, and the Commonwealth of Massachusetts said that issues surrounding Facebook's IPO should be reviewed.  In that regard, the article stated in pertinent part:

> "That's a matter of regulatory concern to us and I'm sure to the SEC," said Richard Ketchum, the Financial Industry Regulatory Authority's chairman and chief executive.  "And without saying whether it's us or the SEC, we will collectively be focusing on it.
>
> Securities and Exchange Commission Chairman Mary Schapiro said investors should be confident in investing, but she conceded there were questions to answer as well.
>
> "I think there is a lot of reason to have confidence in our markets and in the integrity of how they operate, but there are issues that we need to look at specifically with respect to Facebook," she told reporters as she exited a Senate Banking Committee hearing.
>
> The state of Massachusetts also said it would examine the issues. Secretary of Commonwealth William Galvin issued a subpoena to Morgan Stanley in connection with its analyst's discussions with investors about Facebook.

43.     The updated projections were highly material to investors but were omitted from the Offering Materials.

## CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class consisting of all those who purchased the common stock of Facebook pursuant and/or traceable to the Company's IPO (the "Class").  Excluded from the Class are defendants, members of the immediate family of each of the defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any defendant has a controlling interest or which is related to or affiliated with any of the defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

45.     The members of the Class are so numerous that joinder of all members is impracticable. Facebook sold more than 421 million shares of common stock in the IPO. While the

exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes there are thousands of members in the proposed class.  In addition, the names and addresses of the Class members can be ascertained from the books and records of Facebook or its transfer agent or the underwriters to the IPO.  Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in securities class actions.

46.      Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff has retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intends to prosecute this action vigorously.  Plaintiff has no interests antagonistic to, or in conflict with, those of the Class.

47.      Plaintiff's claims are typical of the claims of the other members of the Class because Plaintiff and all the Class members are similarly affected by defendants' wrongful conduct in violation of federal law complained of herein.

48.      Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

> (a) whether the federal securities laws were violated by defendants' acts as alleged herein;
>
> (b) whether the Prospectus and Registration Statement issued by defendants to the investing public in connection with the IPO negligently omitted and/or misrepresented material facts about Facebook and its business; and
>
> (c) to what extent the members of the Class have sustained damages and the proper measure of damages.

49.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members to seek redress for the wrongful conduct alleged.  Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

### COUNT I

**Violations of Section 11 of the Securities Act
Against All Defendants**

50.     Plaintiff repeats and realleges each and every allegation contained above.

51.     This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

52.     The Registration Statement filed with the SEC was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

53.     Facebook is the registrant for the IPO.  The defendants named herein were responsible for the contents and dissemination of the Registration Statement.

54.     As issuer of the common stock, Facebook is strictly liable to Plaintiff and the Class for the misstatements and omissions contained in the Registration Statement.

55.     None of the defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

56.     Plaintiff acquired common stock of Facebook pursuant and/or traceable to the Registration Statement.

57.     The value of Facebook common stock has declined substantially and Plaintiff and the Class have sustained damages as a result of defendants' violations of Section 11 of the Securities Act.

58.     Less than one year elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that the Complaint was filed asserting claims arising out of the falsity of the Registration Statement.  Less than three years elapsed from the time that the securities upon which this Count is brought were offered to the public to the time that the Complaint was filed asserting claims arising out of the falsity of the Registration Statement.

59.     By virtue of the conduct alleged herein, the defendants violated Section 11 of the Securities Act.

## COUNT II

**Violations of Section 12(a)(2) of the Securities Act**
**Against Facebook and the Underwriter Defendants**
**(collectively, the "Section 12(a)(2) Defendants")**

60.     Plaintiff repeats and realleges each and every allegation set forth above.

61.     This Count is brought pursuant to §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2), on behalf of the Class, against the Section 12(a)(2) Defendants.

62.     The Section 12(a)(2) Defendants were sellers and offerors and/or solicitors of purchasers of the common stock offered pursuant to the Prospectus.

63.     As set forth above, the Prospectus contained untrue statements of material fact, omitted to state other facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.  The Section 12(a)(2) Defendants'

actions of solicitation included preparing the inaccurate and misleading Prospectus and participating in efforts to market the IPO to investors.

64.     The Section 12(a)(2) Defendants owed to the purchasers of Facebook common stock, including Plaintiff and the other Class members, the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were accurate and that they did not contain any misstatement or omission of material fact.  The Section 12(a)(2) Defendants, in the exercise of reasonable care, should have known that the Prospectus contained misstatements and omissions of material fact.

65.     Plaintiff and the other members of the Class purchased or otherwise acquired Facebook common stock pursuant to the Prospectus, and neither Plaintiff nor the other Class members knew, or in the exercise of reasonable diligence could have known, of the untruths, inaccuracies and omissions contained in the Prospectus.

66.     Plaintiff and the other members of the Class who purchased or otherwise acquired Facebook common stock in IPO have sustained damages as a result of the untrue and misleading statements of material facts and omissions in the Prospectus, for which they hereby elect to rescind and tender their shares of Facebook common stock to Facebook and the Underwriter Defendants in return for the consideration paid for such common stock, together with interest thereon.  Members of the Class who have sold the securities they purchased pursuant and/or traceable to the IPO are entitled to rescissory damages.

67.     By virtue of the conduct alleged herein, the Section 12(a)(2) Defendants violated Section 12(a)(2) of the Securities Act.

## COUNT III

### Violations of Section 15 of the Securities Act
### Against the Individual Defendants

68.     Plaintiff repeats and realleges each and every allegation contained above.

69.     This Count is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77l(a)(2), on behalf of the Class, against the Individual Defendants.

70.     As detailed in Counts I and II, Facebook is a primary violator of the Securities Act.

71.     Each of the Individual Defendants was a control person of Facebook by virtue of his position as a director and/or senior officer of Facebook.

72.     By reason of the aforementioned conduct, each of the Individual Defendants is liable under Section 15 of the Securities Act, jointly and severally with, and to the same extent as Facebook is liable under Sections 11 and 12(a)(2) of the Securities Act, to Plaintiff and the other members of the Class who purchased common stock pursuant and/or traceable to the IPO.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment, as follows:

A.     Declaring this action to be a proper class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and certifying Plaintiff as a representative of the Class and Plaintiff's counsel as Lead Counsel;

B.     Awarding Plaintiff and other members of the Class damages, including interest;

C.     Awarding Plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, experts' fees and other costs and disbursements;

D.     Awarding Plaintiff and other members of the Class rescission on their §12(a)(2) claims; and

E.      Awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated:  May 24, 2012

Respectfully submitted,

_Curtis V. Trinko_

Curtis V. Trinko
**LAW OFFICES OF CURTIS V. TRINKO, LLP**
16 West 46th Street, 7th Floor
New York, NY 10036
Telephone: (212) 490-9550
Facsimile: (212) 986-0158
E-mail: ctrinko@trinko.com

**KESSLER TOPAZ MELTZER & CHECK, LLP**
MARC A. TOPAZ
SEAN M. HANDLER
DARREN J. CHECK
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

Attorneys for Plaintiff

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, IRVING S. BRAUN, hereby certify as follows:

1.    Plaintiff has reviewed a proposed complaint involving the securities of Facebook, Inc. ("Facebook"), and has authorized the filing of this complaint in the U.S. District Court for the Southern District of New York.

2.    Plaintiff did not purchase or otherwise acquire, the securities of Facebook that are the subject of this action, at the direction of Plaintiff's counsel, or in order to participate in any private action arising under the federal securities laws.

3.    I am willing to serve as a representative party on behalf of the class, and will provide testimony at a deposition and/or at trial, if necessary.

4.    Plaintiff's transactions in the securities that are the subject of this litigation, are listed as follows:

> a).  Client bought 500 shares of Facebook, Inc. ("Facebook") on its IPO on May 18, 2012 at  $38.00 per share; and

> b).  Client still holds 500 shares of Facebook common stock.

5.    During the three years prior to the date hereof, plaintiff has not filed an action in which he has sought to serve or has served, as a representative party for a class in any action filed under the federal securities laws, except for:

> a).  In re ZST Digital Networks, Inc., Civil Action No. 11 CV 03531(GAF)(JC), pending in the U.S. District Court for the Central District of California.

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond his pro rata share of any recovery, or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost wages) directly relating

to the representation of the class.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.  Executed this _24_ day of May, 2012 at Flushing, New York.

Irving S. Braun